UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TJ TAYLOR,<br><br>                   Petitioner,<br><br>       v.<br><br>WILLIAM BARR, et al.,<br><br>                   Respondent. | CASE NO. C20-898-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

Petitioner, by counsel, seeks release from immigration custody under 21 U.S.C. § 2241. Dkt. 1. For the reasons below the Court recommends the petition be DENIED and the case be dismissed without prejudice.

Petitioner contends he was ordered removed on November 15, 2019 and has been in Immigration and Customs Enforcement (ICE) custody since then. *Id.* Petitioner is a citizen of the Federal States of Micronesia (FSM) and claims he is indefinitely detained in violation of the Fifth Amendment. In specific he argues the Court should release him because he will not be removed in the foreseeable future due to FSM's refusal to conduct interviews necessary for removal. *Id.* He also argues his detention is unconstitutional because he is not an aggravated felon or a danger to the community or flight risk. *Id.*

The government argues the Court should deny the petition and dismiss the case. The

REPORT AND RECOMMENDATION - 1

government contends petitioner is an alien subject to an administratively final order of removal and lawfully detained under 8 U.S.C. § 1231(a), and that petitioner's detention does not violate *Zavaydas v. Davis*, 533 U.S. 678 (2001) because removal is likely to occur in the reasonably foreseeable future. Dkt. 6. In specific, the government contends on November 15, 2019 petitioner was served notice of a final administrative removal order based upon his conviction for Assault II under Oregon State Law, an aggravated felony. Petitioner admitted the allegations in the notice and waived his right to remain in the United States for fourteen days to apply for judicial review.

After petitioner failed to apply for judicial review, ICE served petitioner with the final administrative removal order that he be removed to the FSM. On December 19, 2019, ICE submitted a travel document (TD) request to the FSM and on February 24, 2020, ICE received a valid TD and a removal flight was scheduled for March 17, 2020. That flight was cancelled due a travel ban the FSM imposed due to the COVID-19 pandemic.

On March 26, 2020, ICE conducted a post order custody review (POCR) of petitioner's case and determined petitioner would remain in custody as a danger to the community due to his felony convictions for assault and unlawful use of a weapon, and due to a disciplinary incident which petitioner committed while in ICE custody – threatening a staff member or law enforcement with bodily harm.

In April 2020, ICE requested the FSM to provide an update on removal flights. The FSM advised ICE removal flights were suspended until May 31, 2020. ICE accordingly scheduled a removal flight for June 15, 2020. Due to a continuation of the travel ban ICE cancelled the June removal flight. In July, 2020, ICE was advised the FSM travel ban may be lifted in August 2020.

After the government filed its response in July 2020 outlining the above history of the

REPORT AND RECOMMENDATION - 2

case, petitioner filed a "Supplemental Authority in Support of Petition" on September 9, 2020. Dkt. 12. Petitioner claims he corresponded with the FSM's embassy and "has been unable to confirm either that FSM will issue a travel document, or that they expect to open their borders this month." *Id.* at 2. Petitioner also contends he is entitled to a bond hearing if removal is not imminent under *Diouf v. Napolitano* (*Diouf II)*, 634 F.3d 1081, 1082 (9th Cir. 2011). Petitioner argues he should either be released because his release is not imminent or alternatively be granted a bond hearing.

On October 21, 2020, the government filed a supplemental notice of status of removal and declaration in support of its position the Court should deny petitioner's habeas request for relief. Dkt. 13. The government avers the FSM has advised it will issue a travel document once the COVID-19 travel ban has resolved. *Id.* The government avers on October 20, 2020, it requested the FSM update the status of removal flights and that the FSM advised a COVID-19 travel ban was still in place and will resume as soon as the ban is lifted. *Id.* The government further submits at this time petitioner's travel document application is approved by the FSM and that it will conduct another POCR about November 23, 2020 in the event petitioner is not yet removed by that date. *Id.*

Petitioner does not contest the accuracy of the government's recitation of events as of August 2020, or that he is an alien subject to an administratively final order of removal and lawfully detained under 8 U.S.C. § 1231(a) based upon his conviction for the felony of Assault II under Oregon State Law. What petitioner contests is whether there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner argues there is no significant likelihood, and the government argues otherwise.

Petitioner's detention after a final order of removal is governed by 8 U.S.C. § 1231.

REPORT AND RECOMMENDATION - 3

1  Under § 1231(a), the Department of Homeland Security ("DHS")[1] is required to detain a noncitizen during the 90-day "removal period," which began in December 2019. After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens, including Petitioner, or to release them on supervision. 8 U.S.C. § 1231(a)(6). ICE conducted a custody review in this case on March 26, 2020 and determined petitioner should remain in custody.

ICE, however, cannot hold Petitioner indefinitely. In *Zadvydas v. Davis*, the Supreme Court applying the canon of constitutional avoidance held § 1231(a)(6) implicitly limits a noncitizen's detention to a period reasonably necessary to bring about the individual's removal from the United States and does not permit "indefinite" detention. *Zavaydas,* 533 U.S. 678, 701 (2001). The Supreme Court determined it was "presumptively reasonable" for DHS to detain a noncitizen for six months following entry of a final removal order while it worked to remove the individual from the United States. *Id.* "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to release. *Id.*

Here, petitioner has been detained beyond the six-month presumptively reasonable period. His claim the FSM refuses to perform the required investigation to remove him is belied by the record which shows the FSM in fact issued a travel document and a removal flight was

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 4

scheduled, only to be delayed due to the COVID-19 travel ban. As the government recently averred, the FSM has approved petitioner's travel document application.

Petitioner's claim the travel ban establishes his detention is indefinite within the meaning of *Zadvydas* is also unsupported. First, the record does not indicate "there is no significant likelihood of removal." The FSM has never indicated it will not remove petitioner and in fact issued travel documents for removal earlier this year; again as the government avers, petitioner's travel document application is currently approved. Given the facts of this case it is significantly likely that petitioner will be removed.

The real point of dispute is not petitioner's likelihood of removal—that is certain—but whether he will be removed within the "reasonably foreseeable future." The Court finds, at this point, petitioner will be removed within the reasonably foreseeable future. Detention becomes indefinite if, for example, the country designated in the removal order refuses to accept the noncitizen, or if removal is barred by the laws of this country. *See Diouf v. Mukasey* ("*Diouf I*"), 542 F.3d 1222, 1233 (9th Cir. 2008). There is no evidence ICE will not be able to remove petitioner once the travel ban is lifted. There is no dispute ICE was on the verge of removing petitioner in March 2020. The impact of COVID-19 pandemic on travel will not continue indefinitely. It is reasonable to conclude that in the foreseeable future, the ban will be lifted, and petitioner will be removed to the FSM. Thus, he is not entitled to release under *Zadvydas*. Accordingly, the Court recommends denying petitioner's request that he be released at this juncture.

The Court also recommends denying without prejudice petitioner's alternative request for a bond hearing under *Diouf II*. In *Diouf II*, the Ninth Circuit held noncitizens subject to prolonged detention under § 1231(a)(6) are entitled to a bond hearing if removal is **not**

REPORT AND RECOMMENDATION - 5

imminent. 634 F.3d at 1082; *see also Flores Tejada v. Godfrey*, 954 F.3d 1245, 1249 (9th Cir. 2020) (reaffirming validity of *Diouf II*'s holding if removal is not imminent). Here, petitioner was on the verge of removal in March 2020. The Court finds it cannot be said removal is not imminent and that petitioner is thus entitled to a bond hearing before an immigration law judge at this point. However, if petitioner's detention is prolonged, a bond hearing before an immigration law judge might be in order. *See Flores-Tejada* at 1249 (greater procedural safeguards required as length of detention increases in context of construing §1231(a)(6).

In sum, the Court recommends denying petitioner's requests for release or a bond hearing at this juncture and recommends the petition be dismissed without prejudice. The FSA has approved travel documents.  Petitioner was scheduled to be removed earlier this year and will be removed once the COVD-19 travel ban resolves. The COVID-19 pandemic and each country's reaction to its impact on travel has created an unanticipated delay of removal at this point, but petitioner's removal will occur within the reasonably foreseeable future. The question remains whether at some point in the future, if the impact of COVID-19 persists, whether the foreseeability of removal becomes so attenuated that a bond hearing should be conducted at a minimum. As this is an issue to raise at some later point, the Court concludes that dismissal without prejudice is appropriate in this case.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order.  Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **November 5, 2020.**  The Clerk should note the matter for **November 6, 2020**, as ready for the District Judge's

REPORT AND RECOMMENDATION - 6

consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed eight pages. The failure to timely object may affect the right to appeal.

DATED this 22nd day of October, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge